UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NUNZINO PIZZA and TALKING HOPS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | 20 C 4791 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| HOP HEAD FARMS, LLC and CERES PARTNERS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nunzino Pizza and his company, Talking Hops, LLC, sued his former employer, Hop Head Farms, LLC, and its owner, Ceres Partners, LLC, in the Circuit Court of Cook County, seeking a declaratory judgment regarding a contract between Pizza and Hop Head and damages for alleged violations of the Delaware Wage Payment and Collection Act ("DWPCA"), 19 Del. C. § 1101 *et seq.* Doc. 3-1. Hop Head and Ceres removed the suit, invoking the diversity jurisdiction. Doc. 3. Hop Head answered and counterclaimed, Docs. 21, 23, and Ceres moved to dismiss the claims against it, Doc. 19. The motion is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

1

(internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Pizza is a notable player in the craft brew and hops industry, having co-founded Revolution Brewing, Eris Brewery and Cider House, and—pertinent here—Hop Head. Doc. 3-1 at ¶¶ 1-3, 27. Hop Head is a grower, processor, and marketer of hops. *Id*. at ¶ 5. In 2014, Ceres—a private equity firm—bought Hop Head, and Pizza stayed on as Senior Vice President for Hops Procurement and Marketing. *Id*. at ¶¶ 6, 25, 29 & p. 16, ¶ 3(a). Perry Vieth, the CEO of Ceres, became Senior Managing Member and CEO of Hop Head. *Id*. at ¶ 7. Pizza and Hop Head entered into an Employment Agreement. *Id*. at ¶ 29 & pp. 16-24. (Technically, the parties to the Agreement are Pizza and a different entity named, confusingly enough, Ceres Hops & Grain, LLC, *id*. at p. 16, but all agree that Ceres Hops & Grain, LLC was the predecessor-in-interest to Hop Head, *id*. at ¶ 29 n.1; Doc. 20 at 1. So, "Ceres" refers only to Ceres Partners, LLC, the party to this lawsuit and owner of Hop Head.)

As Senior Vice President for Hops Procurement and Marketing, Pizza was responsible for managing sales, expanding business, sourcing imports, and representing Hop Head in external relations. Doc. 3-1 at ¶ 37 & p. 23. The Employment Agreement entitled Pizza to a base salary and sales commissions. *Id*. at ¶¶ 30-31 & p. 17, ¶ 4. From 2015 through May 2017, however, Pizza was paid only a small fraction of his deserved commissions, and in late May 2017 Hop Head stopped paying his commissions altogether. *Id*. at ¶¶ 40-41. Hop Head owes Pizza approximately $380,000 in unpaid wages. *Id*. at ¶ 42.

2

In February 2019, Pizza—with the knowledge and support of Hop Head management—formed Talking Hops to promote Hop Head's international sales. *Id*. at ¶¶ 43, 47-48. On July 9, 2020, Vieth sent Pizza a letter on behalf of Hop Head terminating Pizza's employment. *Id*. at ¶ 50. The letter asserts that Pizza's involvement with Talking Hops violated various provisions of the Employment Agreement, thereby entitling Hop Head to terminate him for cause. *Id*. at pp. 26-28. One such provision, a restrictive covenant, provides that Pizza would not "engage, participate, assist or invest" in any competitor of Hop Head "or any of its affiliates" during his employment and for twelve months thereafter. *Id*. at pp. 19-20, ¶ 8(a).

Pizza and Talking Hops filed this lawsuit less than three weeks later. *Id*. at p. 1.

## Discussion

As noted, Ceres seeks dismissal of all claims against it.

**I.      Claims for Declaratory Judgment**

Plaintiffs seek a declaratory judgment that the Employment Agreement's restrictive covenant is unenforceable or, in the alterative, that Pizza did not violate it by founding and operating Talking Hops. Doc. 3-1 at ¶¶ 56-61. The Agreement has a Delaware choice-of-law provision, *id*. at p. 21, ¶ 14, and the parties agree that Delaware contract law governs the Agreement's interpretation, Doc. 20 at 6; Doc. 29 at 7. The court thus assumes, at least for now, that Delaware law controls. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) ("Under Illinois choice-of-law rules, which we apply as a federal court sitting in diversity, a court must honor a contractual choice of law unless the parties' choice of law would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state.").

Ceres seeks dismissal of the declaratory judgment claims on the ground that it was neither a party to nor a third-party beneficiary of the Employment Agreement. Doc. 20 at 3-4.

3

"Under Delaware law, persons who are neither parties nor intended third party beneficiaries of a contract may not sue to enforce the contract's terms." *Brown v. Falcone*, 976 A.2d 170 (Del. 2009) (unpublished table decision). Accordingly, if Ceres was not a party to or a third-party beneficiary of the Agreement, it lacked any right to enforce the restrictive covenant, which in turn would render it an inappropriate defendant for Plaintiffs' claim for a declaratory judgment that the Agreement was unenforceable or that Pizza did not breach it. Plaintiffs concede that Ceres was not a party to the Agreement, but argue that the pleadings yield a permissible inference that it was an intended third-party beneficiary. Doc. 29 at 2, 11.

As the Delaware Supreme Court has explained, "a third person, who is, in effect, a stranger to the contract, may enforce a contractual promise in his own right and name if the contract has been made for his benefit." *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993). The "essential" characteristic of a third-party beneficiary, that court held, is the "intention of the contracting parties to view that party as either a donee or creditor beneficiary." *Ibid*. That is the extent of the Delaware Supreme Court's guidance on the subject, but the parties urge this court to apply a three-prong test that lower Delaware courts have developed to determine whether a person or entity is a contract's third-party beneficiary: "(1) the contracting parties intended that the third party beneficiary benefit from the contract; (2) the benefit is intended as a gift or in satisfaction of a pre-existing obligation; and (3) the intent to benefit the third party beneficiary is [a] material part of the parties' purpose in entering into the contract." *Scott v. Moffit*, 2019 WL 3976068, at *3 (Del. Super. Aug. 20, 2019) (citing *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)); *see* Doc. 29 at 10; Doc. 32 at 5 (both parties relying on this test). Applying that test, a reasonable

4

inference can be drawn on the pleadings that Ceres was a third-party beneficiary of the Employment Agreement.

As to the test's first element, the Agreement expressly confers benefits upon Hop Head's "affiliates." One provision gave Hop Head the right to terminate the Agreement if Pizza took actions that resulted in "material detriment to the Company or its affiliates." Doc. 3-1 at p. 19, ¶ 5(f)(ii). The restrictive covenant prohibited Pizza from competing "with any business that the Company or any of its affiliates conducts or proposes to conduct." *Id*. at p. 19, ¶ 6(a). As Hop Head's owner, *id*. at ¶¶ 6, 25, 28, Ceres is undoubtedly a Hop Head affiliate that could benefit from the Agreement. Thus, the Agreement itself makes it plausible that "the contracting parties intended that [Ceres] benefit from the contract." *Scott*, 2019 WL 3976068, at *3.

The test's second and third elements are that the benefit to the third-party beneficiary be "intended as a gift or in satisfaction of a pre-existing obligation" and that the intent to benefit be a "material part of the parties' purpose in entering into the contract." *Ibid*. "[T]he intent to benefit a third party can be shown not only by the contract's express language but also by the surrounding circumstances, and many modes of expression of intent are accepted by the courts." 13 *Williston on Contracts* § 37:10 (4th ed. 2020); *see also Scott*, 2019 WL 3976068, at *3 ("An intended beneficiary need not be specified in the contract to qualify as such."). The complaint alleges that Ceres purchased Hop Head in 2014 and that Ceres's senior management controls Hop Head. Doc. 3-1 at ¶¶ 9, 25. Those allegations yield the plausible inference that Hop Head owes Ceres obligations and that securing for Ceres the benefit of Pizza's services was a material part of the Employment Agreement's purpose; at the very least, the court cannot conclude otherwise based solely on the pleadings.

5

In sum, because Plaintiffs plausibly allege that Ceres is a third-party beneficiary of the Employment Agreement, Plaintiffs' claims for a declaratory judgment regarding the Agreement cannot be dismissed as to Ceres at this stage.

## II. DWPCA Claims

The complaint alleges that Hop Head did not pay Pizza compensation due under the Employment Agreement and seeks either compensatory damages or liquidated damages under the DWPCA. *Id.* at ¶¶ 62-75. It is unclear whether the DWPCA governs here, as the statute applies only to employment contracts "either made in Delaware or to be performed wholly or partly therein." 19 Del. C. § 1101(a)(3); *see Hirtle Callaghan Holdings v. Thompson*, 2020 WL 5820735, at *7 (E.D. Pa. Sept. 30, 2020) ("[T]he fact that a contract contains a Delaware choice-of-law provision has no bearing on where the contract is made or performed."). But although Ceres adverted to this issue in its motion to dismiss, Doc. 20 at 5-6, it did not until its reply brief affirmatively argue that the DWPCA does not govern Pizza's employment relationship with Ceres, Doc. 32 at 6-7. Ceres thereby forfeited this argument for purposes of its motion to dismiss. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

The preserved basis for Ceres's motion is that Ceres is not an "employer" of Pizza under Delaware law. The DWPCA governs the relationship between an "employer" and an "employee." 19 Del. C. §§ 1102-1103. Ceres argues that Pizza does not sufficiently allege that Ceres was a joint employer of Pizza alongside Hop Head. Doc. 20 at 4-7. The DWPCA's definition of "employer," *id.* § 1101(a)(4), does not set forth any standard for joint-employer status. Both parties instead point to *A. Mazetti & Sons, Inc. v. Ruffin*, 437 A.2d 1120 (Del.

6

1981), which addresses joint employment in the worker's compensation context. *Id*. at 1123; *see* Doc. 20 at 6; Doc. 29 at 7-8 (both parties arguing that they prevail under *Mazetti*). Again, given the parties' agreement on the governing standard, the court applies *Mazetti*.

*Mazetti* announced this test:

> [A] joint employment relationship exists between a single employee and two employers when he or she is under contract with both employers and the employee: (1) is also under the simultaneous control of both employers; and (2) performs services simultaneously for both employers; and (3) the services performed for each are the same or closely related.

437 A.2d at 1123. The parties debate whether being "under contract with both employers" is truly a requirement under *Mazetti*. Doc. 20 at 6; Doc. 29 at 8-9. *Mazetti* is inconsistent on this point. Although the passage quoted above includes that language, the opinion later refers to "the *three* elements of a joint employment relationship—simultaneous control, simultaneous service and service that is the same as or closely related to that performed for the other employer," which suggests that being "under contract" is not a requirement. 437 A.2d at 1125 (emphasis added). A subsequent lower court decision applied only the three numbered criteria and ignored the "under contract" proviso. *See Hudson v. A.C. & S. Co.*, 535 A.2d 1361, 1364 (Del. Super. 1987). Thus, Pizza appears to be correct that a formal contractual relationship is not necessary for joint-employer status under Delaware law. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 936 (7th Cir. 2012) ("Where a state's supreme court has not yet passed on an issue, we examine decisions of the lower state courts to help formulate an answer.") (quotation marks omitted).

Applying "the three elements" of "simultaneous control, simultaneous service and service that is the same as or closely related to that performed for the other employer," 437 A.2d at 1125, Pizza plausibly alleges that Ceres is his joint employer along with Hop Head. The complaint alleges that "Ceres senior management control Hop Head's employment relations, accounting,

and finances." Doc. 3-1 at ¶ 9. Hop Head and Ceres have the same CEO, Vieth, who both countersigned the Employment Agreement and signed Pizza's termination letter. *Id*. at ¶ 7 & pp. 22, 26. Defendants' notice of removal shows that another individual, Jim Passios, is also a member of both Hop Head and Ceres, Doc. 3 at 2-3, and Pizza asserts that Passios is the COO of Hop Head and a manager at Ceres, Doc. 29 at 12-13. These facts yield the plausible inference that Pizza was under the simultaneous control and in the simultaneous service of both Hop Head and Ceres.

There is also a plausible inference at this stage that Pizza's service for both entities was "the same or closely related." 437 A.2d at 1125. The complaint alleges a single general category of work that Pizza performed: managing sales and marketing for Hop Head products. Doc. 3-1 at ¶ 37. The Employment Agreement went into greater detail, but is consistent with Pizza's allegations. *Id*. at p. 23. To conclude that Pizza in fact performed distinct types of work for the two entities would, at this stage, be a prohibited inference in Ceres's favor. *See Pierce*, 818 F.3d at 277.

In sum, Pizza plausibly alleges that Ceres was his joint employer, and thus he may proceed with his DWPCA claims against Ceres.

## Conclusion

Ceres's motion to dismiss is denied. It shall answer the complaint by February 23, 2021.

February 9, 2021                    _____
                                                  United States District Judge